UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:25-CV-183-JHM

TIMMATHY A. MOORE                                                                                     PLAINTIFF

v.

COMMISSIONER COOKIE CREWS *et al.*                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timmathy A. Moore, a prisoner currently incarcerated at the Kentucky State Penitentiary (KSP), filed the instant *pro se* action. This matter is before the Court on two motions filed by Plaintiff seeking medical treatment (DNs 9 and 10), which the Court will construe as motions for preliminary injunction.

**I.**

The motions are difficult to discern, and the Court will do its best to summarize their allegations. In the first motion (DN 9), Plaintiff states that while housed at Eastern Kentucky Correctional Complex on March 4, 2024, he ate some metal and was taken to an outside hospital. He maintains that "thay shuld ascop in my lung to see"[1] and that this was at "St. Clars" Hospital in Morehead, Kentucky. He states that in July 2025 while at Kentucky State Penitentiary he tried to get his medical file but that personnel changed the wording out and that this needs to be investigated. He states that he has been coughing up blood "from time to time." He states that he got shipped to Luther Luckett Correctional Complex (LLCC) and thought he was going to a lung doctor. He states that Nurse Karen Ramey found the spot from his scope pictures. He states that when he got shipped to LLCC he was told that all x-rays were good and no doctors'

---

[1] The Court is unable to determine if Plaintiff is alleging that they *shoved* a scope in his lung or *should have* scoped his lung.

appointments were scheduled. After he begged a nurse for x-rays to be taken, he received an x-ray in approximately June 2024. He was then sent to Norton Hospital and he was told he had noncalcified nodule in his lung and a doctor ordered a biopsy and to follow up in two weeks. He states that three months later he had another CT scan, not a biopsy, in a different location than his first appointment. He maintains that he did not talk to the doctor again until December 18, 2025, and was told that the spots were gone and that there was no need for a biopsy. He told the doctor that he was coughing up blood from time to time and the doctor told him that this was from his lungs smacking together. Plaintiff states "you lungs do not smack together."

Plaintiff states that on December 24, 2024, he was shipped to Green River Correctional Complex (GRCC) and he told the medical unit what was going on and they took four x-rays and was told by a nurse "all is good." Plaintiff states that at GRCC his legal mail and attorney phone calls were stopped and he was being harassed and that people were trying to kill him.

Plaintiff further states that he was shipped from GRCC to KSP on May 20, 2025, and told the medical unit that he had medical issues and at first they said he was fine and then they sent him out on August 3, 2025, to a medical center for the spot on his lung. He asserts that he was told by a provider that it is going away and had gotten smaller which he says is contradicted by the report at GRCC which said there was nothing there. He states that he also has problems with his kidney and a "blood clod in my nuts," and he thinks that the Kentucky Department of Corrections (KDOC) is trying to avoid treating him. He also describes problems he had filing a motion in his state criminal case and states that KDOC is trying to keep him in prison to watch him die. He states that he also has a broken collar bone but that he was told at GRCC and KSP that it is not broken. He also describes members of his family who have illnesses.

To the motion he attaches several documents, including a letter dated January 21, 2025, addressed to Plaintiff from KDOC Clinical Director Denise Burkett. The letter states as follows:

> Please be advised that your letters (addressed to Commissioner Crews and Governor Beshear) were received in our office on October 15, 2024, regarding follow up on a lung nodule. I have reviewed your electronic health record and note that you had a follow up chest CT scan on October 7, 2024, and a pulmonologist on December 19, 2024. The pulmonologist informed you that the lung nodule had decreased in size (10 mm to 6 mm) and that a biopsy via bronchoscopy would not be possible due to the small size of the nodule. You then asked for a second opinion. If you would like a second opinion, refer to CPP 13.2. A second opinion would be done at your cost. If you would like to proceed with a second opinion, at your cost. Please contact HSA Vasquez.

In his second motion (DN 10), Plaintiff requests the Court order him to be taken to the Pikeville Hospital and states that he believes he has cancer.

## II.

Preliminary injunctive relief is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant a preliminary injunction, "'the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)). These factors are not "rigid and unbending requirements," as there is no "fixed legal standard" in determining whether to issue an injunction. *In re: Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These

factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."). Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction. *Overstreet*, 305 F.3d at 573.

Although no single factor is controlling when determining whether a preliminary injunction should be issued, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiff has not shown that he is likely to prevail on the merits. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837-38. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

> inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* (citations omitted). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).

Based on Plaintiff's own assertions in the motions, he has been seen by KDOC medical personnel or sent to outside medical providers for his complaints about his lungs on at least five occasions in approximately June, September, and December 2024 and August and December 2025. The Court finds that the allegations in the motions amount to disagreement with the medical judgments made by medical providers and a desire for a second opinion and do not establish a claim for deliberate indifference to serious medical needs.

Moreover, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."). Plaintiff provides no medical evidence to support that his conclusions about his medical diagnosis are based on anything other than his own speculation. *See Parker v. Adu-Tutu*, No. 10-2747-PHX-GMS, 2012 U.S. Dist. LEXIS 71649, at *11 (D. Ariz. May 22, 2012) (denying motion for preliminary injunction where the plaintiff produced "no medical evidence establishing [his] medical condition or the progression of his condition"). While Plaintiff disagrees with the diagnosis of the medical providers, the Court will not second guess their medical judgments and finds that Plaintiff's allegations do not give rise to

5

a constitutional violation. Therefore, Plaintiff has failed to establish a likelihood of success on the merits.

Furthermore, to meet the irreparable injury component of a motion for preliminary injunctive relief, a movant must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney*, 443 F.3d at 552. Plaintiff has shown no basis, other than his own speculative opinion, to support that harm is actual or imminent.

The third and fourth elements also weigh against granting preliminary injunctive relief. Preliminary injunctions related to medical care in prisons may "have an unduly adverse [e]ffect on the ability of correctional medical personnel to exercise their professional judgment in determining the appropriate course of treatment for inmates." *Garren v. Prisoner Health Servs.*, No. CIV.A. 11-14650, 2012 U.S. Dist. LEXIS 8048, at *15 (E.D. Mich. Jan. 4, 2012) (footnote omitted), *report and recommendation adopted sub nom. Garren v. Prison Health Servs.*, No. 11-CV-14650-DT, 2012 U.S. Dist. LEXIS 8045 (E.D. Mich. Jan. 24, 2012). Moreover, it is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. The Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motions for preliminary injunctive relief (DNs 9 and 10) are **DENIED**.

Date: February 12, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.010