**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:25-CV-183-JHM**

TIMMATHY A. MOORE                                                                      PLAINTIFF

v.

COMMISSIONER COOKIE CREWS *et al.*                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timmathy A. Moore filed the instant *pro se* 42 U.S.C. § 1983 action.  Plaintiff

filed his complaint (DN 1) and later filed a motion seeking medical treatment in which he provides

more detailed allegations concerning his medical condition and treatment (DN 9).[1]  The Court will

construe the motion as a motion for leave to amend the complaint and **GRANTS** the motion

(DN 9).  *See* Fed. R. Civ. P. 15(a).

The matter is now before the Court upon an initial review of the complaint (DN 1) and

amended complaint (DN 9) pursuant to 28 U.S.C. § 1915A.  Upon review, the Court will dismiss

the action for the reasons stated herein.

**I.  SUMMARY OF ALLEGATIONS**

Plaintiff is a convicted inmate at the Kentucky State Penitentiary (KSP) (DN 1, PageID

#: 1).  He sues Kentucky Department of Corrections (KDOC) Commissioner Cookie Crews;

Governor Andy Beshear; and Denise Burket, whom he states is employed as "KY DOC Health

---

[1] By prior Memorandum Opinion and Order, the Court construed this motion as one for preliminary injunctive relief and denied the motion (DN 15).  Plaintiff filed an objection (DN 16) to the Court's Memorandum Opinion and Order, which will be addressed separately.  However, the objection does not dispute any of the facts summarized by the Court concerning his medical treatment.

Services" (*Id.*, PageID #: 1-2).  He sues each Defendant in his or her individual and official capacity (*Id.*, PageID #: 2).[2]

In the complaint, Plaintiff states that Crews "let Ky DOC put my life in [danger]" at different KDOC prisons by "[swapping] out medical records stopping [grievances] blocking attorney numbers" (*Id.*, PageID #: 4).  He asserts that Crews is "over" the KDOC so she should be held accountable for violations of his constitutional rights (*Id.*).

Plaintiff states that Beshear is "over Ky DOC as well" (*Id.*).  Plaintiff maintains that he and his mother have contacted Beshear but that he has been assaulted three times in KDOC prisons and "they" tried to cover it up (*Id.*).  He asserts that he has a spot on his lung but that his grievances have been stopped (*Id.*).  He states that his rights have been violated in KDOC prisons (*Id.*).

Plaintiff also states in the complaint that Burket knew he had a spot on his lung in 2023 while he was housed at Eastern Kentucky Correctional Complex (EKCC) (*Id.*, PageID #: 4).  He reports that he got shipped to KSP and on May 6, 2024, a medical provider found a spot on his lung and sent him to a lung doctor but that he got shipped to LLCC on approximately June 10, 2024 (*Id.*).  He states, "No spot on my lung no lung dr [appointment] no n[o]thing all good" (*Id.*).  He asserts that he had to beg to get two more x-rays and then he was sent to Norton Hospital (*Id.*).  He states that he was supposed to get a biopsy but never got one.  He then got shipped to Green River Correctional Complex (GRCC) on December 23, 2024, and they took an x-ray and found it was "all good no spot on my lung" (*Id.*).

Plaintiff states that after he tried to stab a grievance coordinator on June 3, 2025, he had a CT scan and a spot on his lung was found (*Id.*).  He maintains that KDOC does not have the "stuff"

---

[2] Where the complaint form asks if the filer has begun any other lawsuits dealing with the same facts alleged in this action, Plaintiff lists two case numbers (*Id.*, PageID #: 3).  However, the Court has reviewed these cases and finds that they do not in fact deal with the same facts alleged herein.

2

to do a biopsy "but its getting small" (*Id.*).  He states that they are deliberately indifferent "so they don't have to do nothing" and committing medical malpractice (*Id.*).  He states that they stopped his grievances and phone calls (*Id.*).  Plaintiff also states that he was at "St. Clars" Hospital on March 24, 2024, and they did not tell him he had a spot on his lung (*Id.*).  He states, "Ms. Luks [swapped] out my medic[a]l th[i]ng [when] I tri[e]d to get [copies made]" (*Id.*).  He states that KDOC is trying to cover up his medical issues (*Id.*).  He states that in November 2024 while he was housed at LLCC he had x-ray of his chest after he got into a fight and "they [said] all good" (*Id.*).

Plaintiff states that he is now at KSP and that he had a number of x-rays on August 6, 2025, which apparently showed that his collarbone is broken and will need to be reset and that "[they're] not trying to do that [either] go [figure]" (*Id.*).  He claims that this is medical negligence (*Id.*).

In the amended complaint, Plaintiff states that while housed at EKCC on March 4, 2024, he ate some metal and was taken to an outside hospital (DN 9, Page ID#: 25).  He maintains that "th[e]y shuld [scope] in my lung to see"[3] and that this was at "St. Clars" Hospital in Morehead, Kentucky (*Id.*).  He states that in July 2025 while at KSP he tried to get his medical file but that personnel changed the wording out and that this needs to be investigated (*Id.*).  He states that he has been coughing up blood "from time to time" (*Id.*, Page ID#: 25).  Plaintiff asserts that he got shipped to LLCC and thought he was going to a lung doctor (*Id.*).  He states that Nurse Karen Ramey found the spot from his scope pictures (*Id.*).  He states that when he got shipped to LLCC no one told him he had a spot on his lung, he was told that all x-rays were good, and no doctors' appointments were scheduled (*Id.*).  After he begged a nurse for x-rays to be taken, he received an

---

[3] The Court is unable to determine if Plaintiff is alleging that they *shoved* a scope in his lung or *should have* scoped his lung.

x-ray in approximately June 2024 (*Id.*). He was then sent to Norton Hospital, and he was told he had noncalcified nodule in his lung and a doctor ordered a biopsy and to follow up in two weeks (*Id.*). He states that three months later he had another CT scan, not a biopsy, in a different location than his first appointment (*Id.*). He maintains that on December 18, 2025, he was told that the spots were gone and that there was no need for a biopsy (*Id.*). He told the doctor that he was coughing up blood from time to time, and the doctor told him that this was from his lungs smacking together which Plaintiff disputes (*Id.*).

Plaintiff states that on December 23, 2024, he was shipped to GRCC, and he told the medical unit about his medical issues and that they took four x-rays and was told by a nurse "all is good" (*Id.*, Page ID#: 27). Plaintiff states that at GRCC his legal mail and attorney phone calls were stopped and he was being harassed and that people were trying to kill him (*Id.*).

Plaintiff further states that he was shipped from GRCC to KSP on May 20, 2025, and he told the medical unit that he had medical issues and at first they said he was fine and then they sent him out on August 3, 2025, to a medical center for the spot on his lung (*Id.*). He asserts that he was told by a provider that it is going away and had gotten smaller which he says is contradicted by the report at GRCC which said there was nothing there (*Id.*). He states that he also has problems with his kidney and a "blood clo[t] in my nuts," and he thinks that the KDOC is trying to avoid treating him (*Id.*). He also describes problems he had filing a motion in his state criminal case and states that KDOC is trying to keep him in prison to watch him die (*Id.*, PageID #: 28). He states that he also has a broken collar bone but that he was told at GRCC and KSP that it is not broken (*Id.*). He also describes members of his family who have illnesses (*Id.*).

To the amended complaint, Plaintiff attaches several documents, including a medical record from Norton Hospital pertaining to imaging performed on Plaintiff's chest on July 23, 2024 (DN 9-1, PageID: 45).  Under the heading "Impressions," the provider noted the following:

> 1. Emphysema.
> 2. Clustered nodules in the right upper lobe measure up to 1 cm and favored to be post infectious or inflammatory.  Continued attention on follow-up recommended.
> 3. Additional noncalcified nodules measure up to 5 mm and given the presence of emphysema, continued attention on follow-up recommended.
> 4. Potential enlarged right hilar node although limited by lack of intravenous contrast and if present likely reactive.

(*Id.*).  Plaintiff also attaches a letter dated January 21, 2025, addressed to Plaintiff from Burket, whose job title is KDOC Clinical Director (*Id.*, PageID: 49).  The letter states as follows:

> Please be advised that your letters (addressed to Commissioner Crews and Governor Beshear) were received in our office on October 15, 2024, regarding follow up on a lung nodule.  I have reviewed your electronic health record and note that you had a follow up chest CT scan on October 7, 2024, and a pulmonologist on December 19, 2024.  The pulmonologist informed you that the lung nodule had decreased in size (10 mm to 6 mm) and that a biopsy via bronchoscopy would not be possible due to the small size of the nodule.  You then asked for a second opinion.  If you would like a second opinion, refer to CPP 13.2.  A second opinion would be done at your cost.  If you would like to proceed with a second opinion, at your cost.  Please contact HSA Vasquez.

(*Id.*).  On the letter, Plaintiff handwrites that he does not believe that the spot is getting smaller and thinks that they are just saying that so that they do not have to treat him (*Id.*).

As relief, Plaintiff seeks compensatory and punitive damages, payment of all medical and court fees, and release from prison so that he can get proper medical care (DN 1, PageID #: 6).

## II.  STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

5

relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III.  ANALYSIS

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States.  A claim under § 1983 must therefore allege two elements:  (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Absent either element, no § 1983 claim exists.  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A.  Official-capacity claims for damages

Each of the Defendants is an official or employee of the Commonwealth of Kentucky. State officials or employees sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks compensatory and punitive damages from state officers or employees in their official capacities, his official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.

### B.  Individual-capacity claims

#### 1.  Crews and Beshear

To state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). It is evident that Plaintiff's allegations against Crews and Beshear are not based on their own

7

individual actions but are based on their supervisory authority over KDOC personnel.  Therefore, the allegations fail to state a claim against Crews and Beshear.

Moreover, to the extent Plaintiff alleges that either Defendant denied his grievances or failed to act on his grievances, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his handling of the plaintiff's grievance.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter*, 532 F.3d at 576 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim.").

For these reasons, Plaintiff's individual-capacity claims against Crews and Beshear will be dismissed for failure to state a claim upon which relief may be granted.

### 2.  Burket

To establish a § 1983 claim premised on inadequate medical care in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).  A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component.  The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005).

To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Thus, a court typically will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996). "Where the claimant received treatment for his condition, . . . he must show that his treatment was

'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

While the complaint and amended complaint are not a model of clarity, it is evident that Plaintiff has not been denied medical treatment for the spot on his lungs. He has been seen by KDOC medical personnel or sent to outside medical providers for his complaints about his lungs on at least five occasions in approximately July, September, and December 2024 and August and December 2025. "Deliberate indifference is a high standard; consequently, medical malpractice, negligent diagnosis or treatment, and mere disagreement with medical treatment are inadequate to state a § 1983 claim." *Theriot v. Maclaren*, No. 21-2596, 2022 U.S. App. LEXIS 6881, at *6 (6th Cir. Mar. 16, 2022) (citing *Estelle*, 429 U.S. at 106; *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017)). Plaintiff's allegations make clear that he disagrees with the treatment he has received. However, such a disagreement does not state an Eighth Amendment claim. *Id.*; *see also Taylor v. Well Path Med.*, No. 3:22-CV-00705, 2024 U.S. Dist. LEXIS 149569, at *18 (M.D. Tenn. Aug. 20, 2024) (inmate's "desire for different, more aggressive, or more prompt treatment is simply not sufficient to support a constitutional claim"), *report and recommendation adopted*, No. 3:22-CV-00705, 2024 U.S. Dist. LEXIS 185369 (M.D. Tenn. Oct. 10, 2024). Moreover, even if Plaintiff's allegations showed that a medical provider made a mistake in diagnosing the spot on his lung, the allegations would amount to negligence, which is also insufficient to state an Eighth Amendment claim. *See Loyd v. Hacker*, No. CV 6:21-53-WOB, 2021 U.S. Dist. LEXIS 70240, at *2 (E.D. Ky. Apr. 12, 2021) ("[A]llegations of medical malpractice or negligent diagnosis and treatment are not cognizable in the constitutional context."); *Gabehart v. Chapleau*, No. 96-5050, 1997 U.S. App. LEXIS 6617, at *5 (6th Cir. Apr. 4, 1997) (finding "[m]isdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference").

Plaintiff seems to mention the treatment for his collarbone as a means to bolster his arguments concerning treatment for his lungs.  However, in as much as he is asserting a separate claim based on the treatment for his collarbone, it is again clear that Plaintiff received x-rays of his collarbone which medical providers found showed that his collarbone was not broken.  Plaintiff disagrees with this assessment and insists his collarbone is broken.  Once again, a disagreement with medical treatment is not sufficient to state an Eighth Amendment violation.

Moreover, Plaintiff alleges that his grievances were stopped and that he was denied attorney calls.  Even if Plaintiff could establish that Burket was directly responsible for these actions, as stated above, there is no constitutional right to a grievance procedure, and inmate cannot state a claim under § 1983 based on the handling of his grievances.  *See Walker*, 128 F. App'x at 445; *Olivier v. City of Clarksville*, No. 3:16-CV-03306, 2017 U.S. Dist. LEXIS 24779, at *7-8 (M.D. Tenn. Feb. 21, 2017) (finding that "a plaintiff cannot premise a § 1983 claim on allegations that a jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place").  Moreover, Plaintiff does not explain what calls to an attorney he intended to make or how this would have affected his medical treatment.  His allegations concerning denial of attorney calls are conclusory and too lacking in factual specificity to state a claim.  *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557).

Plaintiff also alleges that medical personnel "swapped out" his medical records.  This allegation is again conclusory.  However, he does not allege that Burket swapped out or changed his medical records.  As stated above, Burket cannot be held liable based on the actions of her subordinates.  *See Miller*, 408 F.3d at 817 n.3.

For these reasons, Plaintiff's individual-capacity claim against Burket must be dismissed for failure to state a claim upon which relief may be granted.

### C.  Injunctive relief

Plaintiff requests relief in the form of release.  Plaintiff cannot seek release from prison as relief in a § 1983 action.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Because Plaintiff cannot seek relief in this § 1983 action, his claim for injunctive relief must be dismissed for failure to state a claim.

### IV.  CONCLUSION

Accordingly, the Court will enter a separate Order dismissing the action.

Date:   March 16, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
4414.010